towns where it was located; but by sections 3 and 4 of the general tax law such property was, by the legislature, expressly subjected to taxation in such towns. City of Rochester v. Coe and City of Amsterdam v. Hess, supra. The court of appeals in the Hess Case said this was in accordance with natural justice as between the taxpayers of the towns and the municipality receiving the benefits from the property. We see no reason why we should struggle to hold this property again exempted from taxation by a law which does not make the intention of the legislature clear to provide for such exemption. Very likely the franchise, right, authority, or permission to the city to construct and maintain waterworks, mains, and pipe lines, which was, by the amendatory act, real estate, was not assessable or taxable in the town. It could not be said to be, in the language of section 4, "not within the corporation." It was a franchise, though not a special franchise, but was within the corporation, and therefore not the subject of taxation in the town. The return shows this franchise was not assessed, but that the assessment was only of the tangible property lying in the town. While the act makes the pipe line and the franchise both species of real property, we can see no objection to separating them, and assessing the pipe line and leaving the franchise unassessed.

Our conclusion is that the order appealed from should be affirmed, with costs. So ordered. All concur.

---

(59 App. Div. 470.)

DOUGLASS v. NORTHERN CENT. RY. CO.

(Supreme Court, Appellate Division, Fourth Department. March 12, 1901.)

1. MASTER AND SERVANT—KILLING OF BRAKEMAN—EVIDENCE.

The defendant railroad ran north and south, and was crossed at right angles by the R. Ry. At the junction there was a Y called "No. 1," which connected the branch tracks or switches of the two roads, and a second Y, called "No. 2," which branched from No. 1 and returned to it. Deceased, a brakeman on the R. Ry., while engaged in switching on a dark night, was hanging on the ladder of a box car, when he was struck by a gondola car, which was standing so near the end of Y No. 1 that only a few inches remained between it and cars passing on the switch. The testimony as to whether the gondola car was pushed so near the end of the switch by a crew of the defendant company, who admitted taking cars out of Y No. 1 on the evening before the accident, or was left in that position by the crew of another freight train on the R. Ry., was conflicting. The inspector for both roads testified that on the morning after the accident a part of the cars attached to the gondola car were standing on Y No. 2, which would make it impossible for a crew on Y No. 1 to push it any nearer the end of Y No. 1. *Held*, that a finding of the jury that defendant's crew was responsible for the dangerous position of the gondola car was not so clearly against the weight of the evidence as to justify setting aside of the verdict in favor of plaintiff.

2. APPEAL—LAW OF THE CASE—FORMER DECISION—CHANGE IN EVIDENCE.

Where a judgment for plaintiff was reversed on the testimony of a certain witness, which, if true, showed defendant was not guilty of negligence, and in a subsequent appeal the evidence contradicting such witness was much stronger, the appellate division was not bound by the former decision on a subsequent appeal.

3. CONTRIBUTORY NEGLIGENCE—JUDGMENT—EVIDENCE.
  Defendant railroad crossed the R. Ry. at right angles, and the switches of the two roads were connected by a Y. Plaintiff's intestate, who was a brakeman on the R. Ry., was hanging on the ladder of a box car while engaged in moving cars on the R. Co.'s switch, on a dark night, and was fatally injured by being struck by a car which was standing so near the end of the Y that only a few inches remained between it and cars passing on the switch. The question of the contributory negligence of deceased was submitted to the jury, and their attention called to all the circumstances. *Held*, that a judgment for plaintiff would not be reversed on the ground that the evidence showed that deceased was guilty of contributory negligence.

4. DAMAGES—EXCESSIVENESS.
  Plaintiff's intestate was 26 years of age, in good health, and employed as a brakeman at $55 per month. He was occasionally intrusted with the charge of trains as conductor, and in a fair position for promotion. On his death he left a wife and two small children. *Held*, that a verdict for $10,000 for his death, through the negligence of defendant, was not excessive.

Appeal from trial term, Oswego county.

Action by Cora M. Douglass, as administratrix of the estate of Virgil D. Douglass, deceased, against the Northern Central Railway Company. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

G. M. Diven, for appellant.
D. P. Morehouse, for respondent.

WILLIAMS, J. The action was brought to recover damages for the death of the respondent's intestate, alleged to have been caused by the negligence of the appellant. The appeal involves the questions of negligence, absence of contributory negligence, and the amount of damages, whether the verdict of the jury in favor of the respondent was against the weight of evidence, and whether the damages awarded ($10,000), were excessive. A brief statement should be made as to the locality and immediate cause of the accident.

The appellant's road at Wallington, where the accident occurred, ran substantially north and south, and the road of the Rome, Watertown & Ogdensburg substantially east and west, the tracks of the two roads crossing each other nearly at right angles. In the southeasterly angle of these tracks of the two roads there was a curving track running from the one to the other, or, more correctly speaking, from a side track of the one to a side track of the other. This curving track we may designate as "Y No. 1." There were two other curving tracks north of the one already referred to, one leaving Y No. 1, and returning to it again, which may be designated "Y No. 2," and the other leaving Y. No. 2, and returning to it again, which may be designated as "Y No. 3." These Y's were used for storing and transferring cars from the one road to the other. The deceased was a brakeman upon a freight train on the Rome, Watertown & Ogdensburg road. At the time of the accident, the crew of his train was engaged in placing a box car from its freight train upon Y No. 1, to be transferred

therefrom to appellant's road. The engine took this car, and started to back it easterly along the branch track, to the point where such branch connected with Y No. 1. The deceased was riding upon the southerly side of the car, near its front, his feet in a stirrup just below the car, and his hands holding an iron rod upon the side of the car, so that his whole body was extended south of the side of the car. As the car approached the intersection of the two tracks, he was struck by a gondola car standing upon Y No. 1, so close to the branch track as to leave but a few inches between the two cars, was thrown to the ground, and thus received the injuries which caused his death. This gondola car had been placed upon Y No. 1 by the crew of another freight train upon the Rome, Watertown & Ogdensburg road some hours before, and, if that crew left it where it was at the time of the accident, the neglect in leaving it in that position was not, of course, chargeable to the appellant. The plaintiff, however, alleged and sought to prove that the first Rome, Watertown & Ogdensburg crew left the car in a safe position further away from the branch track, and that the crew of one of appellant's freight trains thereafter, and before the accident, in taking other cars from Y No. 1, carelessly moved the gondola car into the dangerous position which it occupied at the time of the accident. After the first Rome, Watertown & Ogdensburg crew left the car upon Y No. 1, and before the accident took place, a crew of one of appellant's freight trains did go in upon Y No. 1, and take out some cars, but all of that crew testified that they did not interfere with or move this gondola car. All of the first Rome, Watertown & Ogdensburg crew testified that they left the car in a safe position, further away from the branch track than the place where it was standing when the accident occurred. There was no ground for claiming that the car changed its position itself after it was left on Y No. 1 by the first Rome, Watertown & Ogdensburg crew, or that any crew or person other than the crew of appellant and the first crew of the Rome, Watertown & Ogdensburg had anything to do with the car after it arrived at Wallington and before the accident, nor was there any reason to believe either of the crews knowingly or intentionally left or placed the car in the dangerous position in which it stood at the time of the accident.

The act, whichever crew did it, was careless and negligent merely, not willful. The only probable or reasonable solution of the question was that one of these two crews was responsible for the dangerous position of the car. Either the first Rome, Watertown & Ogdensburg crew left it there, or the appellant's crew moved it there. Which was it? This was the question submitted to the jury for their determination. In addition to the evidence of the persons comprising these two crews, there was the evidence of the members of the Rome, Watertown & Ogdensburg crew, of which deceased was a member, and that of some other witnesses, who testified to the operations of the defendant's crew while at work on Y No. 1, and as to the position of the gondola car, and other cars attached to it, after the accident, the same night and the next morning. The evidence of these latter witnesses was not harmonious, but contradictory. To illustrate, La Rock, an inspector in the employ of both railroads, and called by the

plaintiff as to other questions, testified, on cross-examination, that he saw the gondola car, and the cars connected with it, the next morning after the accident, and that the west end of this batch of cars was standing off from Y No. 1 and upon Y No. 2. It was this evidence given by La Rock that particularly impressed the appellate court upon the former appeal, and apparently was controlling, and induced the reversal of the judgment then appealed from. See opinion of Merwin, J., 41 App. Div. 615, 58 N. Y. Supp. 73. Other evidence was discussed, but this seemed to be the most important. The court might well consider this fact as to where the west end of the batch of cars was before the accident—whether on Y No. 1 or Y No. 2—as of the greatest consequence, because, if it was on Y No. 2, then the appellant's crew could not have moved the gondola car to the east by pushing against the west end of such batch of cars. The appellant's crew was all the time on Y No. 1, and at no time on Y No. 2; so that, if La Rock's evidence was to be regarded as true, the appellant's crew could not be held responsible for the dangerous position of the gondola car. It is true that he did not see the cars until the next morning, and, after the accident the night before, the second Rome, Watertown & Ogdensburg crew pushed the batch of cars to the west, and placed their box car on Y No. 1, and all the cars far enough to the west so as to be clear of the branch track, but they do not claim themselves to have pushed any of the cars upon Y No. 2. La Rock's evidence was to some extent contradicted upon the first trial, but the contradiction was not of such a nature as to prevent the appellate court from relying upon his evidence. Upon the second trial, however, other evidence was given by the respondent upon this subject, so that we cannot now say that we are passing upon substantially the same evidence as that contained in the record on the former appeal. We are not, therefore, concluded by the former decision, but must pass upon the question as it is now presented on the present record; and the question is whether the finding of the jury that the appellant's crew was responsible for the dangerous position of the gondola car was so against the weight of the evidence that the verdict should be set aside. The question is not what we think the truth is, but what the jury believed it to be, acting upon the evidence; and the court cannot set aside the finding of the jury unless it was so against the weight of the evidence as to show that it was not the result of their sound judgment, but of passion, prejudice, or favor.

We think, under this well-settled rule, the verdict of the jury should not be disturbed so far as this question is concerned. There were many witnesses sworn on each side. They were before the jury, who had the opportunity to observe their appearance on the stand while giving their evidence. Their credibility was for the jury. Then it did not necessarily follow that any of the witnesses were dishonest, or testified untruly, knowing that they did so. All these transactions took place in the nighttime, within a few hours, and the night was very dark. Some of the witnesses may have been, and very likely were, mistaken as to what they did or saw, and in what they testified to on the subject. Their interest in the result of the trial, by reason of their sympathy for the respondent or appellant, may have

led them unconsciously to state, more positively than they could well do, what they saw and what they did. These considerations may have led the jury to discredit some of the witnesses, and it was for the jury to say which witnesses were so discredited by them. If, for any of the reasons referred to, the jury believed the evidence of the appellant's crew and other witnesses was unreliable, they had a right to disregard it, and to give effect to the evidence of the respondent's witnesses and the Rome, Watertown & Ogdensburg crews, and then they would naturally or necessarily arrive at the conclusion they did in rendering the verdict for the respondent.

The next question is whether the jury were justified in finding the deceased free from contributory negligence. He was bound to exercise, not the greatest care to avoid injury, but only such care as an ordinarily prudent and careful person would have used under just the circumstances in which he was placed, and whether he did exercise such care was a question for the jury to determine. The court fairly submitted this question to the jury, calling their attention to all the circumstances. The manner in which he was riding upon the car; the darkness of the night; the place he carried his lantern; the direction in which he was looking; whether he had a right to assume that no cars upon the Y were near enough to put him in danger as he approached the intersection of the two tracks,—all these things were for the consideration of the jury, and then they were required to say whether, under the circumstances, he exercised the care and caution of a reasonably prudent and careful person. If he did, then he was free from contributory negligence. We think the finding of the jury upon this question should not be disturbed.

The remaining question is the one of damages,—whether the verdict for $10,000 was excessive. This court has not latterly hesitated in considering the verdicts rendered in negligence cases, and in taking the necessary steps to procure a reduction of the amounts thereof, where justice required it to be done. We are of the opinion, however, in this case, that our interference with the finding of the jury is not required. The deceased was at the time of his death 26 years of age, in robust health, of exemplary habits, fairly well educated, and was in the line of railroad promotion. He was a brakeman on a freight train, but had acted more or less as a conductor on freight trains, and had served as baggageman also. He was earning $54.67 per month, or $656 per year, with a fair prospect of promotion and a larger salary as the years went by. He left a wife and two small children, both girls. How much the wife and children suffered pecuniarily by the death of the deceased was for the jury to determine, within reasonable bounds. The question was fairly submitted to them by the trial court, and we do not feel, under the circumstances of this case, that the court is called upon to disturb their finding.

For the reasons stated, our conclusion is that the judgment and order appealed from should be affirmed, with costs. So ordered. All concur.